ADKINS v. MOODY.

5-1358                               306 S. W. 2d 333

Opinion delivered November 4, 1957.

*Fietz & McAdams* and *Frierson, Walker & Snellgrove,* for appellant.

*J. Brinkerhoff* and *L. A. McLin,* for appellee.

J. SEABORN HOLT, Associate Justice. This is a suit (filed March 18, 1954) by Hazel Adkins Moody against her son, Dalton Adkins, appellant, for an accounting.

Mrs. Moody, in effect, alleged in her complaint that she was the owner of a certain Hardware Store located in Harrisburg, Arkansas, and that she had acquired title

to same by an Order of the Probate Court of Poinsett County, Arkansas, setting off the same to her as her separate property to be applied on her dower and statutory allowance in the personal estate of J. P. Adkins, deceased.

She also alleges that all of the heirs of J. P. Adkins, her deceased husband, each, including the Defendant, Dalton Adkins, executed to her Bills of Sale to all of their right, title and interest in and to all the personal estate and personal property of every kind and nature owned by the Estate of J. P. Adkins, deceased, at the time of his death and that she employed the Defendant, Dalton Adkins, her son, to take over the operation of the store under an agreement that he was to operate it and take out a salary each month, and what other expenses he might have; that Dalton did take over and operate said hardware store for her until the present suit was filed (3-18-54).

She prayed for judgment for the cash value of said Hardware Store as fixed by said Probate Court Order in the sum of $4,617.75, with the profits thereon for the years 1947 to 1953, both inclusive, and for the value of the assets of the said estate of J. P. Adkins, deceased, which she acquired by said Bills of Sale from the heirs, all of which the Defendant wrongfully converted to his own use and refused to deliver to the Plaintiff, and for a total judgment of $52,826.50. Appellant answered, in effect, admitting his mother's title to the hardware store building and fixtures under the Probate Court Order, but denied all other material allegations and denied that appellee was entitled to recover any sum from him. In a cross-complaint, making his mother along with his brothers and sisters defendants, he alleged that on February 14, 1953, he purchased the hardware store building and fixtures, and also the stock of hardware therein, all for $10,000.00 and that of this amount, $8,000.00 was for the building and fixtures and $2,000.00 for the stock of goods. Appellee interposed a general denial to this cross-complaint. On a trial, during which a voluminous record was compiled, there was

a decree in favor of appellee for $26,859.51. This appeal followed.

In this case, it appears undisputed that Dalton Adkins, on February 14, 1953, acquired by deed the hardware building and fixtures. He stoutly contends that he also acquired the stock of goods as above alleged at the time he bought the building and fixtures, and that since his father's death, as alleged in his cross-complaint, the hardware store had been operated by him under an agreement with his mother, his brothers and sisters, as a family business for the benefit of them all. The mother denied this and testified, in effect, that she owned the stock of goods in question and had employed her son, Dalton, to operate the store and to take out a monthly salary and any necessary expenses; that she, individually and personally, acquired the hardware stock of goods which her husband owned at his death by the following Probate Court Order above referred to: "It is therefore by the Court considered, ordered and adjudged that all right, title and interest of the estate of J. P. Adkins in the merchandise and stock of hardware and liquor stock of the value of $8,780.21, be and the same is hereby vested in Hazel Adkins individually as her separate property. This June 4, 1947. Francis Cherry, Judge (R. 13 and 14).", that Dalton was to operate the store and account to his mother. Appellee further testified that she placed her son in charge and that she never derived anything from the store during her son's management; that he had been operating the store ever since that arrangement. The first time that she knew that Dalton claimed to own the stock of goods was when the government, in 1954, required additional money on the 1950 income tax and Dalton told her she would have to pay it because the hardware store was assessed in her name but that he owned it. "How he got it I don't know." There was other evidence that appellee did not sell, or agree to sell, the stock of merchandise to appellant.

The evidence presented is in irreconcilable conflict. The trial court found it necessary to appoint a Master to make an audit of the hardware business but the Mas-

ter, after considerable effort to carry out his duty, reported to the Court, in effect, that he found appellant's records and files in such a confused, tangled and inadequate state that he was unable to make an audit that would reflect the business and condition of the hardware store. He therefore tendered his resignation which the Court accepted. No other appointment of a Master was made and in fact, no request appears to have been made by either side that another Master be appointed. There was evidence that the value of the stock of hardware delivered to appellant's mother by Probate Court Order was of the value of $4,617.75 and that she put large sums of money into the business, amounting to some $40,000.00 or more, in an effort to sustain it · and make it profitable. There was also evidence that total gross sales from 1947 to 1953, inclusive, amounted to about $397,997.00 and unaccounted profits realized to which appellee was entitled, but did not receive.

In the circumstances, it was clearly the duty of appellant (and the burden was on him) as appellee's agent and employee in charge of the business to keep an accurate record of the store's business; to account for money and property coming into his hands; all receipts and disbursements and render an accounting to his principal, appellee. This he completely failed to do. In the very recent case of *Lynch* v. *Garnes,* 227 Ark. 767, 301 S. W. 2d 739, we said, "As stated in 2 Am. Jur. 226 ("Agency" § 286) on the duty of an agent to keep and render accounts: 'The duty of an agent to account for moneys of his principal coming into his hands is well recognized. As stated by the American Law Institute, unless otherwise agreed, an agent is subject to a duty to keep, and render to his principal an account of, money or other things which he has received or paid out on behalf of the principal.' "

As indicated, when all the evidence is considered, and absent an accounting and report by a Master, and the failure of appellant to keep adequate records and files, we hold that the findings and decree of the trial court in the circumstances are not against the preponderance. of the testimony and accordingly, we affirm.